**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**CYNTHIA A. STONE; PATRICIA MARTINEZ;** )
**JOSE A. CRUZ, JR.; ELEDIA TORRES;** )
**RONDELL MUHAMMAD; SHARON** )
**MUHAMMAD; JAMES M. AMI; SHARON K.** )
**AMI; BETTYE JEAN BROWN; MOHSIN M.** )
**DHANJI; WAHIDA M. DHANJI; DONNA R.** )
**LOVE; EDWARD REVIS; and EXIQUIO** )
**CAMACHO, individually and on behalf of** )
all others similarly situated, )
)
**Plaintiffs,** )
)
**vs.** )          **Case No. 10 C 6410**
)
**WASHINGTON MUTUAL BANK; J.P.** )
**MORGAN-CHASE & CO.; DLJ MORTGAGE** )
**CAPITAL, INC.; DLJ CAPITAL CORP.;** )
**CREDIT SUISSE; CREDIT SUISSE (USA),** )
**INC.; CREDIT SUISSE GROUP AG;** )
**DOUGLAS ROSEMAN; PATRICK A.** )
**REMMERT; ANDREW KIMURA; LORI M.** )
**RUSSO; BRUCE KAISERMAN; ANGELO** )
**BULONE; MICHAEL CRISCITO; JAMES** )
**D. CRISCITO; LUBOMIR PENEV; TERENCE** )
**DOLCE; SELECT PORTFOLIO SERVICING,** )
**INC.; TIMOTHY O'BRIEN; CODILIS &** )
**ASSOCIATES P.C.; ERNEST J. CODILIS,** )
**JR.; JEANELLE GRAY; CHRISTINA ALLEN;** )
**KLUEVER & PLATT LLC; JASON F.** )
**ALTMAN; CITIBANK N.A.; WELLS FARGO** )
**BANK; BANK OF AMERICA N.A.; PNC** )
**BANK N.A.; U.S. BANK N.A.; and HSBC** )
**BANK (USA) N.A.,** )
)
**Defendants.** )

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Cynthia Stone and thirteen other current or former homeowners have sued various entities in connection with their mortgage loans. They contend that the defendants engaged in a multi-year conspiracy to fraudulently foreclose on their homes. They assert claims under federal and state law. Defendants have filed eleven separate motions to dismiss plaintiffs' claims. The Court addresses these motions collectively and, for the reasons stated below, grants them in part and denies them in part.

## Background

The Court takes the following facts from plaintiffs' first amended complaint and state court records relating to the underlying foreclosure actions. *See Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000) ("In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment").

Plaintiffs are fourteen Illinois residents who are current or former defendants in nine state court mortgage foreclosure lawsuits. Defendants are thirty-one banks, mortgage-servicing agents, law firms, and individuals. Plaintiffs allege that the defendants are engaged in a conspiracy to fraudulently foreclose upon and seize properties belonging to plaintiffs and other similarly situated persons. Specifically, plaintiffs contend that defendants

> combined or confederated among themselves to form an association-in-fact for the purpose, by their joint efforts, of filing false and deceptive documents with State and federal courts in tens of thousands of mortgage-foreclosure cases nationwide for the purpose of illegally seizing and converting homes using straw-man mortgage foreclosure plaintiffs (that have no interest in the taken properties) and fraudulent documents.

Am. Comp. ¶ 1.

Though plaintiffs' complaint is not a model of clarity, it appears to allege that the foreclosure actions are fraudulent because the defendant banks have "bifurcated" plaintiffs' loans by selling their mortgage notes to other entities.  *See id.* ¶ 2.  This alleged scheme allows defendants to obtain multiple repayments for each mortgage loan.  Each defendant bank receives money once when it sells a mortgage note to investors in mortgage-backed securities, and again after it prevails in a foreclosure lawsuit and sells the collateral.  *Id.*  Plaintiffs allege that the banks that filed the foreclosure lawsuits are "straw man plaintiffs" because they hold no legal interest in the mortgage note or the underlying property.  *Id.* ¶ 68.  They also contend that defendants decide which bank will serve as plaintiff in each foreclosure lawsuit based upon "which bank has contributed the most into the association-in-fact, . . . which bank needs to avoid tax liability, and . . . which bank needs to avoid legal liability."  *Id.*

Plaintiffs also assert that the defendant banks filed fraudulent affidavits during the foreclosure actions to conceal the fact that they lacked an enforceable interest in the underlying properties.  *See id.* ¶¶ 4, 10, 12, 14, 17, 21, 28, 32, 36.  Individuals known colloquially as "robo-signers" signed these affidavits despite having no personal knowledge of the facts contained in them.  *See id.* ¶ 70.  Based in large part on such affidavits, plaintiffs allege, seven of the nine foreclosure actions against plaintiffs proceeded to judgments in favor of the defendant banks.  By contrast, the foreclosure action against Stone resulted in a judgment that was later vacated, and the Muhammads' foreclosure case proceeded to judgment but was dismissed following a judicial sale of the property.  The state court dismissed Brown's foreclosure case prior

to judgment.

Plaintiffs allege economic and emotional injuries resulting from the foreclosure actions brought against them. *See id.* ¶ 56. They seek relief based upon defendants' violations of federal criminal statutes (count one), state laws regarding conspiracy, unjust enrichment, and intentional infliction of emotional distress (count two), the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 (count three), 42 U.S.C. § 1983 (count four), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(a)-(d) (counts six and seven). In count five, plaintiffs seek certification of this lawsuit as a class action under Federal Rule of Civil Procedure 23.

## Discussion

Defendants have moved to dismiss plaintiffs' amended complaint under, *inter alia*, Rules 12(b)(1) and 12(b)(6). In addressing these arguments, the Court accepts plaintiffs' allegations as true and draws reasonable inferences in their favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010); *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003).

The party asserting jurisdiction bears the burden of persuasion under Rule 12(b)(1). *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The Court may consider evidence outside of the complaint in assessing whether it has subject matter jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

To survive defendants' motions to dismiss under Rule 12(b)(6), plaintiffs must provide "a short and plain statement" showing that they are entitled to relief. Fed. R. Civ. P. 8(a)(2). Though a complaint need not contain "detailed factual allegations, . . . a

formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint fails to state a plausible claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Additionally, to the extent that plaintiffs allege fraud or mistake by defendants, plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

**1.     Federal criminal law claims**

In count one, plaintiffs seek damages and injunctive relief for defendants' alleged violation of 18 U.S.C. §§ 1341, 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1951 (interference with commerce and extortion), 18 U.S.C. § 1952 (racketeering), 18 U.S.C. 1956 (money laundering), 18 U.S.C. § 2314 (transportation of stolen goods), and 18 U.S.C. § 2315 (receipt of stolen goods). Am. Compl. ¶¶ 95-102. Defendants argue that count one must be dismissed because no private right of action exists under any of these statutes. *See, e.g.,* Def. HSBC Bank (USA) N.A.'s Mem. of Law in Supp. of its Mot. to Dismiss at 7-8.

Plaintiffs do not appear to argue that these statutes explicitly or implicitly provide for a private right of action. In fact, it is clear that they do not. *See Wisdom v. First Midwest Bank,* 167 F.3d 402, 409 (8th Cir. 1999) (18 U.S.C. §§ 1341, 1343, and 1951); *Park Nat'l Bank of Chicago v. Michael Oil Co.*, 702 F. Supp. 703, 704 (N.D. Ill. 1989) (18 U.S.C. § 1344); *Kissi v. Panzer*, 664 F. Supp. 2d 120, 127 (D.D.C. 2009) (18 U.S.C.

§ 1952); *Schwartz v. F.S. & O. Assocs., Inc.*, No. 90 CIV 1606 (VLB), 1991 WL 208056, at *2-3 (S.D.N.Y. Sept. 27, 1991) (18 U.S.C. § 1956); *Cooper v. North Jersey Trust Co. of Ridgewood, New Jersey*, 226 F. Supp. 972, 980 (S.D.N.Y. 1964) (18 U.S.C. § 2314); *Boyd v. Wilmington Trust Co.*, 630 F. Supp. 2d 379, 385 (D. Del. 2009) (18 U.S.C. § 2315). In opposing defendants' motions to dismiss, plaintiffs suggested that they did not intend to plead a separate claim in count one. *See* Answer to Codilis Mem. at 13-14; *see also id.* at 14 ("The laundry list of R.I.C.O.-related crimes is set forth in Count I of the Complaint, and the private cause of action is asserted in Count VI of the Complaint"). For these reasons, defendants are entitled to dismissal of count one.

## 2. Section 1983 claim

In count four, plaintiffs allege that defendants' scheme to foreclose on and seize their property deprived them of due process and equal protection of the law. They seek damages, injunctive relief, and restitution pursuant to 42 U.S.C. § 1983. Defendants respond that plaintiffs' complaint fails to allege that defendants acted under color of state law or deprived plaintiffs of a federal right.

Plaintiffs do not allege that defendants are government officials or entities. "[A]lthough private persons may be sued under [section] 1983 when they act under color of state law, they may not be sued for 'merely private conduct, no matter how discriminatory or wrongful.'" *London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). "Two conditions must be satisfied in order for a private party's actions to be deemed taken under color of state law. First, the alleged deprivation of federal rights must have been

caused by the exercise of a right or privilege created by the state, a rule of conduct imposed by the state, or someone for whom the state is responsible." *Id.* "Second, the private party must be a person who may fairly be said to be a state actor." *Id.*

Plaintiffs have not adequately alleged that defendants acted under color of state law. They argue that defendants obtained fraudulent foreclosure judgments against plaintiffs which resulted in their eviction from their homes by a sheriff, but "the misuse of state law by a private party is not action under color of state law." *Id.* at 746-47; *see also Spencer v. Lee*, 864 F.2d 1376, 1392 (7th Cir. 1989) ("[T]he mere invocation of statutory remedies does not of itself transform private activity into state action."). Plaintiffs have alleged no other facts supporting an inference that defendants are state actors. They argue that dismissal is inappropriate because "[p]aragraph 122 of the Complaint tracks the statutory language [of section 1983] and thereby alleges that Defendants acted 'under color of . . . statute, ordinance, regulation, custom, or usage of [a] State.'" Answer to Codilis Mem. at 15. But as noted earlier, "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim. *Twombly*, 550 U.S. at 555. For these reasons, the Court dismisses count four.

### 3.     Class certification claim

In count five, plaintiffs seek an order certifying the lawsuit as a class action. Defendants counter that the rules governing class certification are procedural and do not give rise to a substantive cause of action. The Court agrees. "Class actions in federal courts are authorized by Rule 23 of the Federal Rules of Civil Procedure, and those rules 'shall not abridge, enlarge or modify any substantive right.'" *Marshall v. H &*

*R Block Tax Servs., Inc.*, 564 F.3d 826, 828 (7th Cir. 2009) (quoting 28 U.S.C. §

2072(b)).  Put simply, Rule 23 does not give rise to a separate claim that a plaintiff can

assert in a civil complaint.  *See Diaz-Ramos v. Hyundai Motor Co.*, 501 F.3d 12, 16 (1st

Cir. 2007) ("[T]he courts that have considered the issue have held that procedural class

action provisions neither create substantive rights nor give rise to an independent cause

of action").  To the extent that plaintiffs wish to seek certification of this lawsuit as a

class action, a separate count in their complaint is not the appropriate vehicle for doing

so.  *Howard v. Renal Life Link, Inc.*, No. 10 C 3225, 2010 WL 4483323, at *2 (N.D. Ill.

Nov. 1, 2010) ("Whether a plaintiff has fulfilled Rule 23 class action requirements . . . is

not an appropriate inquiry at the motion to dismiss stage").  Accordingly, the Court

dismisses count five.

**4.      Remaining claims**

        In count two, plaintiffs assert claims for unjust enrichment, intentional infliction of

emotional distress, and civil conspiracy.  In counts three, six, and seven, plaintiffs seek

relief under the FDCPA and RICO.  Defendants argue that the claims of plaintiffs with

final, adverse state court foreclosure judgments (Martinez, Cruz and Torres, the Amis,

the Dhanjis, Love and Revis, and Camacho, collectively the "judgment plaintiffs") are

barred by the *Rooker-Feldman* doctrine.  They also contend that the claims of the other

plaintiffs (Stone, Brown, and the Muhammads, collectively the "remaining plaintiffs") are

subject to dismissal on various grounds.

**a.      The judgment plaintiffs**

        As noted above, the foreclosure actions resulted in final adverse judgments

against all plaintiffs except for Stone, Brown, and the Muhammads. *See* Codilis Mem., Ex. A (final judgments against Camacho, Cruz and Torres, the Amis, the Dhanjis, Love and Revis, and Martinez). These judgments allegedly resulted in plaintiffs' eviction from their properties and/or sales of those properties. *See* Am. Compl. ¶¶ 9, 13, 22, 29, 33, 37. Defendants argue that the Court lacks jurisdiction over these plaintiffs' claims because their alleged injuries resulted from the state court foreclosure judgments. Plaintiffs counter that their injuries "occurred independently of (and prior to) the judgments of the defrauded State foreclosure court that Defendants used to convert the Plaintiffs' properties and were caused solely by the acts of the defendants." Am. Compl. ¶ 57.

The *Rooker-Feldman* doctrine bars federal district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In other words, "[i]f the injury the plaintiff complains of resulted from, or is inextricably intertwined with, a state-court judgment, then lower federal courts cannot hear the claim." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008). The doctrine does not apply, however, if "the alleged injury is distinct from the judgment." *Id.* "In short, the doctrine prevents a party from effectively trying to appeal a state-court decision in a federal district or circuit court." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 431 (7th Cir. 2009).

The Court concludes that the judgment plaintiffs' remaining claims are barred by

the *Rooker-Feldman* doctrine. The injuries alleged by these plaintiffs stem from the foreclosure judgments obtained by the defendant banks. As noted above, each of the plaintiffs with an adverse judgment alleges eviction from and/or the sale of their foreclosed property. *See* Am. Compl. ¶¶ 9, 13, 22, 29, 33, 37. Plaintiffs also allege that "[t]here are eight ways in which Plaintiffs have been injured by Defendants' scheme," all of which arise from the foreclosure judgments against plaintiffs. *Id.* ¶ 56 (alleging that the foreclosures do not satisfy plaintiffs' mortgage debts, result in large deficiency judgments in favor of defendants, require plaintiffs to pay defense costs, ruin plaintiffs' credit, decrease adjacent properties' value, preclude plaintiffs from selling their homes, and result in evictions leading to emotional distress). Finally, though counts two, six, and seven allege injury in a mostly conclusory way, count three alleges that defendants have injured plaintiffs "by taking the[ir] homes in the name of purported clients that have no interest in the collateral, for their own profit and to the detriment of Plaintiffs." *Id.* ¶ 116.

The Court finds this case analogous to *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008). In *Kelley*, a group of consumers sued a debt collection agency and its attorneys, contending that defendants' efforts to obtain attorneys' fees in a state court collection action violated the FDCPA. *Id.* at 601. On appeal, plaintiffs argued that their injuries were independent from the state court judgments awarding attorneys' fees to defendants "because their lawsuit seeks only to remedy defendants' deceptive *representations* and *requests* related to attorney fees and not the fact that the state courts awarded attorney fees." *Id.* at 603 (emphasis in original). The court rejected this

argument, reasoning that "[b]ecause defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA claims that plaintiffs bring ultimately require us to evaluate the state court judgment." *Id.* at 605. The same is true here: plaintiffs allege that defendants engaged in a scheme to defraud state courts "for the purpose of illegally seizing and converting" their homes. Am. Compl. ¶ 1. In other words, the success of the alleged scheme depended upon defendants prevailing in the foreclosure actions. For this reason, ten of the fourteen plaintiffs are plainly seeking relief based on injuries they suffered as a result of adverse foreclosure judgments. As in *Kelley*, the Court cannot determine that defendants' conduct during the state court foreclosure lawsuit was unlawful "without determining that the state court erred by issuing judgments" in favor of the defendant banks. *Kelley*, 548 F.3d at 605.

Plaintiffs also argue that the *Rooker-Feldman* doctrine is inapplicable "if the State court obtained jurisdiction only through extrinsic fraud committed by the opposing party." Answer to Codilis Mem. at 12. In support, they cite *Long v. Shorebank Dev. Corp.*, 182 F.3d 548 (7th Cir. 1999). That case, however, provides no support for such an exception. In *Long*, a former tenant sued her landlord for damages arising out of an allegedly unlawful eviction. *Id.* at 551. Long alleged that Shorebank used fraud to mislead the court into believing that she did not dispute the eviction. *Id.* The district court dismissed Long's claims, reasoning that the *Rooker-Feldman* doctrine precluded the court from exercising jurisdiction. *Id.* The Seventh Circuit reversed, noting that *Rooker-Feldman* is inapplicable "if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings." *Id.* at 558. Recognizing that Illinois law

effectively precluded Long from raising her federal and state law claims as counterclaims during the eviction proceeding, the court held that Long did not have a reasonable opportunity to raise her claims in state court. *Id.* at 559-60. Importantly, the court expressly rejected the notion that Long could avoid *Rooker-Feldman* based on the fraud committed by Shorebank. *Id.* at 559 ("[W]e do not believe [Long] may rely on the deception of her opponents to demonstrate that she was not afforded a reasonable opportunity to raise her federal claims"); *see also id.* at 558 (noting that in cases where *Rooker-Feldman* has been held inapplicable based on lack of a reasonable opportunity to raise the issue in state court, "the federal litigants have pointed to *some factor independent of the actions of the opposing party* that precluded the litigant from raising the federal claims during the state court proceedings") (emphasis added).

Aside from defendants' alleged fraud, plaintiffs have not identified anything that prevented them from raising their claims during the foreclosure proceedings. No procedural barrier appears to have existed. Indeed, Stone filed counterclaims in her foreclosure suit in which she alleged violations of federal and state law. *See* PNC Bank Mem., Ex. 7. Thus, *Long* does not provide a basis for an exception to the *Rooker-Feldman* doctrine in this case.

Finally, even if the judgment plaintiffs' claims were not barred by the *Rooker-Feldman* doctrine, the claims would be subject to dismissal under the doctrine of issue preclusion, or collateral estoppel. Several of the defendants contend that issue preclusion bars the judgment plaintiffs' claims, and plaintiffs have offered no response

to this argument in their voluminous briefing.  Under Illinois law,[1] "[t]he collateral estoppel doctrine bars relitigation of an issue already decided in a prior case" and "has three requirements:  (1) the court rendered a final judgment in the prior case; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior case; and (3) the issue decided in the prior case is identical with the one presented in the instant case."  *People v. Tenner*, 206 Ill. 2d 381, 396, 794 N.E.2d 238, 247 (2002).

The first two elements of the test from *Tenner* are plainly satisfied, because the judgment plaintiffs lost on the merits in their state court foreclosure actions.  *See* Codilis Mem., Ex. A.  Moreover, as discussed above, all of the judgment plaintiffs' claims are premised on their allegation that the defendant banks lacked an interest in plaintiffs' properties.  *See, e.g.,* Am. Comp. ¶¶ 1, 63-66, 94, 115-16, 118-19, 129, 144.  The state courts, however, expressly found otherwise in each foreclosure judgment by finding that the foreclosing bank had "standing, capacity and authority to maintain this cause [of action]."  *See generally* Codilis Mem., Ex. A (state court judgments).  The third requirement from *Tenner* is therefore satisfied.  The judgment plaintiffs cannot relitigate the validity of the defendant banks' legal interests in their homes.

In summary, the judgment plaintiffs allege injuries that stem from the final judgments entered against them in state court.  They have not shown that their claims are independent of the state court judgments or that they lacked a reasonable opportunity to raise the claims during the state proceedings.  Moreover, Illinois state

---

[1] Illinois law governs this issue because the judgment plaintiffs lost in Illinois state court.  *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002) ("[T]he preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law.").  *See also* 28 U.S.C. § 1738.

courts found the defendant banks' interests in the judgment plaintiffs' properties to be valid and enforceable. Accordingly, the Court dismisses counts two, three, six, and seven as to these plaintiffs.

**b.     The remaining plaintiffs**

The remaining plaintiffs—Stone, Brown, and the Muhammads—do not have final, adverse state court judgments. As such, their claims are not barred by the *Rooker-Feldman* doctrine or issue preclusion. Defendants nevertheless contend that the remaining plaintiffs' claims are subject to dismissal on various other grounds. The Court will address each claim separately.

**i.     FDCPA claim**

In count three, plaintiffs allege that defendants violated the FDCPA by attempting to use "false pleadings to collect unlawful debts by taking the Plaintiffs' homes." Am. Compl. ¶ 116. Defendants counter that plaintiffs' FDCPA claims must be dismissed because (1) the claims are barred by the applicable statute of limitations and (2) plaintiffs have failed to adequately allege that defendants are "debt collectors" within the meaning of the FDCPA.

**(a)     Statute of limitations**

Defendants first contend that plaintiffs' FDCPA claims are barred by the statute of limitations. An action to enforce a liability under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Court agrees with those judges in this district who have held that when an FDCPA claim is premised upon the unlawful prosecution of a foreclosure action, the claim accrues upon the filing of the foreclosure action. *Jones v. US Bank Nat'l Ass'n*, No. 10 C 0008,

2011 WL 814901, at *5 (N.D. Ill. Feb. 25, 2011); *see also Judy v. Blatt, Hasenmiller, Leibsker and Moore LLC*, No. 09 C 1226, 2010 WL 431484, at *3 (N.D. Ill. Jan. 29, 2010) (citing *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), *and Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002)) ("Where an FDCPA violation arises out of a collection lawsuit, the Seventh Circuit has not decided when the FDCPA's statute of limitations begins to run, though the circuit courts that have ruled on the issue agree that the clock starts when the allegedly wrongful litigation begins").

Plaintiffs' FDCPA claims are premised upon defendants' efforts to "collect unlawful debts" by filing "false pleadings" in state court. Am. Compl. ¶ 115-16. The Court therefore agrees that, as a general rule, the claim of a plaintiff in this situation would accrue on the date on which the defendant filed the allegedly fraudulent foreclosure lawsuit involving the plaintiff.

That, however, is only the general rule. None of the parties have addressed, however, whether the discovery rule might delay the accrual of the FDCPA's statute of limitations. Though the Seventh Circuit does not appear to have decided the issue, the Ninth Circuit and at least one court in this district have held that it does. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939-41 (9th Cir. 2009); *Greenfield v. Kluever & Platt, LLC*, No. 09 C 3576, 2010 WL 604830, at *1-2 (N.D. Ill. Feb. 16, 2010).

The expiration of a statute of limitations is an affirmative defense that a plaintiff is not required to negate in his complaint. *See generally Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 1474795, at *2 (N.D. Ill. Apr. 12, 2010). As the Seventh Circuit has recently stated, "[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative

defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Rather, dismissal is appropriate only if "the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id.* at 674-75.

The Court does not believe that plaintiffs at issue here have pled themselves out of court, particularly in view of their allegations of a wide-ranging scheme to defraud. In short, at the pleading stage, the Court is not prepared to reject as a matter of law the possibility that the plaintiffs could not reasonably have discovered the basis for their claims until some time within the period of limitations, at some date after the banks filed their foreclosure complaints. The Court therefore declines to dismiss plaintiffs' FDCPA claims on statute-of-limitations grounds.

### (b)  "Debt collectors"

Next, defendants contend that plaintiffs' FDCPA claims must be dismissed because their complaint does not adequately allege that the defendants are debt collectors. "The FDCPA regulates only the conduct of 'debt collectors.'" *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). With certain exceptions not applicable here, it defines "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). By contrast, the statute defines a "creditor" as

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4).  The FDCPA treats these two categories as "mutually exclusive" for the purposes of applying the FDCPA to a particular debt.  *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *see also Ruth*, 577 F.3d at 796 ("The FDCPA distinguishes between debt collectors, who are subject to the statute's requirements, and creditors, who are not.").  Therefore, plaintiffs' complaint must be dismissed if it fails to raise a plausible inference that defendants were "debt collectors" within the meaning of the FDCPA.

The Court concludes that plaintiffs have stated a valid FDCPA claim against two of the defendants in this case.  Plaintiffs' FDCPA claim, which appears in count three of the complaint, targets only a small subset of the defendants:  it alleges that defendants DLJ Mortgage Capital, Inc. (DLJ), Select Portfolio Services, Inc. (SPS), Ernest Codilis, Codilis & Associates, and Jason Altman are "debt collectors."  Am. Compl. ¶¶ 113-14. Because plaintiffs' complaint, taken as a whole, alleges different facts regarding these entities, the Court will address whether plaintiffs have sufficiently alleged each to be a "debt collector" under the FDCPA.

First, plaintiffs allege that DLJ is a debt collector because it "claims to have bought the Stones' mortgage note."  *Id.* ¶ 113.  This fact does not give rise to any plausible inference that DLJ acted with the "principal purpose" of collecting debts "owed or due" to another entity.  15 U.S.C. § 1692a(6).  To the contrary, if DLJ owned the Stones' mortgage note, it would be a person "to whom a debt is owed" and would thus be a "creditor" under the FDCPA, not a debt collector.  *See* 15 U.S.C. § 1692a(4). Therefore, plaintiffs have failed to state an FDCPA claim against DLJ.

Next, plaintiffs allege that SPS, Codilis, Codilis & Associates, and Altman are debt collectors because they "are attorneys for debt buyers and are attempting to collect debt." Am. Compl. ¶ 114. Regarding SPS, plaintiffs allege elsewhere in their complaint, that SPS "obtain[s] or produce[s] forged documents" and "organize[s] and assign[s] straw-man plaintiffs in tens of thousands of mortgage-foreclosure cases nationwide, without evidence of ownership." *See* Am. Compl. ¶ 42(f). Plaintiffs also allege that Codilis & Associates "is a 'foreclosure mill' that processes thousands of cases through the Circuit Courts of Illinois each year" using the scheme alleged in plaintiffs' complaint. *Id.* ¶ 117. Plaintiffs make similar allegations against Ernest Codilis. *See id.* ¶ 42(I) (alleging that Codilis "filed the fraudulent documents against eight of the nine named Plaintiffs" and "has participated in thousands of illegal seizures and conversions of homes"). Their allegations against Jason Altman are far more limited: he is alleged only to have been involved in the Stones' case. *See id.* ¶ 42(k).

Given that the Supreme Court has held that the FDCPA's definition of "debt collector" encompasses "attorneys who '*regularly*' engage in consumer-debt-collection activity, even when that activity consists of litigation," the Court finds that plaintiffs have adequately pled that SPS and Codilis & Associates are "debt collectors" under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (emphasis added). Plaintiffs, however, have failed to plead any facts establishing that Jason Altman "regularly" engaged in debt collection activity via litigation and therefore have failed to state an FDCPA claim against him. *Id.* Similarly, plaintiffs have not adequately alleged that Ernest Codilis personally participated in their foreclosures as a debt collector. Though they allege that Ernest Codilis filed the fraudulent documents at the heart of this case,

the exhibits attached to their complaint reflect otherwise. Am. Compl. ¶ 42(I); *see id.*, Exs. A, E, I, M, O, T, W (underlying foreclosure complaints not signed by Ernest Codilis); *see also Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) (internal quotation marks omitted) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."). Plaintiffs' complaint is devoid of any other factual allegations against Codilis in his individual capacity.

Plaintiffs have alleged no facts suggesting that any of the remaining defendants are debt collectors under the FDCPA. In a response brief, they contend that the defendant banks are not "creditors" because "they were foreclosing fraudulently on mortgages that were owned by other parties." Answer to Bank of America Mem. at 11-12. This argument misses the mark, as the defendant banks were not trying to recover against plaintiffs on another party's behalf. Rather, they were plainly seeking to recover debts that they asserted were owed to them. In other words, plaintiffs allege that the banks acted as creditors, even if (taking plaintiffs' allegations as true) they were not truly creditors. At least one court, addressing this precise argument, has reached this same conclusion in dismissing a plaintiff's FDCPA claims against a foreclosing entity. *See King v. CitiMortgage, Inc.*, No. 2:10-cv-01044, 2011 WL 2970915, at *10 (S.D. Ohio July 20, 2011) (citation omitted) ("That the complaint denies that CitiMortgage actually held the mortgage note does not take CitiMortgage outside the definition of a creditor"). Similarly, though in a slightly different context, the Seventh Circuit has held that a defendant's assertions about the nature of a debt govern whether the defendant is a debt collector under the FDCPA. *See Schlosser*, 323 F.3d at 538 (holding that

whether an assignee is a "debt collector" depends upon "the status of the obligation *asserted by the assignee*") (emphasis added).

In summary, plaintiffs have pled enough facts to state a FDCPA claim against defendants SPS and Codilis & Associates. By contrast, because plaintiffs allege that the defendant banks were acting as creditors and have not pled facts showing that any of the remaining defendants were acting as debt collectors, they have failed to state a claim against these defendants.

### ii. RICO and RICO conspiracy claims

In counts six and seven, plaintiffs assert RICO and RICO conspiracy claims under 18 U.S.C. §§ 1962(a)-(d). Defendants argue that plaintiffs have failed to adequately plead the elements of these claims under Federal Rule of Civil Procedure 8 or plead fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b).

### (a) RICO claim

A RICO claim is a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). As such, to state a claim under RICO, plaintiffs must allege a pattern of racketeering activity. Section 1962(a) requires plaintiffs to plead "the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). Section 1962(b) requires plaintiffs to allege that defendants, "through a pattern of racketeering activity[,] . . . acquire[d] or maintain[ed] . . . any interest in or control of any enterprise which is engaged in . . . interstate or foreign commerce." 18 U.S.C. § 1962(b); *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759,

780 (N.D. Ill. 2005). Finally, under section 1962(c), plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gamboa*, 457 F.3d at 705.

A "pattern of racketeering activity" consists of two or more predicate acts within a ten-year period. *See* 18 U.S.C. § 1961(5). The predicate acts must be "related" and "amount to or pose a threat of continued criminal activity," *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989), and plaintiffs must specify the time, place, and content of any allegedly fraudulent communications. Fed. R. Civ. P. 9(b); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

Plaintiffs have failed to adequately allege a pattern of racketeering activity. Their amended complaint alleges, in conclusory fashion, that "all of the Defendants were engaged in 'racketeering activity' within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth" elsewhere in the complaint, "including collection of unlawful debts." Am. Compl. ¶ 146. But plaintiffs offer nothing supporting their contention that defendants' foreclosure actions constituted racketeering activity within the meaning of section 1961(1). They contend that "[t]he laundry list of R.I.C.O.-related crimes is set forth in Count I of the complaint," but count one does little more than track the language of several of the statutes listed in section 1961(1). Answer to Codilis Mem. at 14; Am. Compl. ¶¶ 90-105. It offers no facts at all regarding which of defendants' acts, if any, constituted mail fraud, wire fraud, or any of the other federal crimes which constitute "racketeering activity" under section 1961(1). Moreover, there are no allegations in the complaint suggesting that defendants were engaged in the collection of "unlawful debt" as defined in RICO. *See* 18 U.S.C. § 1961(6). Without

such facts, plaintiffs' complaint falls far short of stating a valid RICO claim. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (internal quotation marks omitted) (recognizing that RICO plaintiffs must satisfy a high pleading standard: "[L]oose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do.").

Equally problematic is plaintiffs' sweeping contention that "all of the Defendants" were engaged in racketeering activity. Am. Compl. ¶ 146. "[W]hen the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud." *Jepson*, 34 F.3d at 1328; *see also Vicom*, 20 F.3d at 778 ("We have previously rejected complaints that have 'lumped together' multiple defendants"). As such, when a RICO claim rests on predicate acts such as mail fraud or wire fraud, as in the present case, "the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." *Jepson*, 34 F.3d at 1328. Plaintiffs' complaint does not come close to doing so, even if count one is liberally construed as a list of predicate acts in support of counts six and seven. The allegations in count one repeatedly refer to "the Defendants," without distinguishing among them. A RICO plaintiff cannot treat thirty-one defendants so monolithically in alleging their participation in a pattern of racketeering activity. *Goren*, 156 F.3d at 730 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)) ("'Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.''").

For these reasons, plaintiffs have failed to adequately plead a RICO claim under

18 U.S.C. §§ 1962(a)-(c).  Accordingly, the Court dismisses count six.

### (b)     RICO conspiracy claim

Plaintiffs also seek relief under RICO's conspiracy provision, 18 U.S.C. § 1962(d).  "To state a claim for conspiracy under [section] 1962(d), a plaintiff must allege '(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals.'" *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999) (quoting *Goren*, 156 F.3d at 732); *see also* 18 U.S.C. § 1962(d) ("It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section").

Though count seven contains no specific factual allegations, it incorporates all of the preceding paragraphs in the complaint.  Am. Compl. ¶ 155.  Thus, plaintiffs' allegations in count seven are based upon the same course of conduct as their RICO claims in count six.  Because the Court has concluded that plaintiffs' RICO claims are subject to dismissal on the bases described above, plaintiffs' RICO conspiracy claims must also be dismissed.  *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) ("Since Appellants fail to establish a violation of section 1962(c), their section 1962(d) claim based on the same facts must fail as well")*; Meier v. Musburger*, 588 F. Supp. 2d 883, 912 (N.D. Ill. 2008) (citation omitted) ("Since a pattern of racketeering activity is RICO's key requirement, an agreement to commit acts that do not constitute a pattern cannot be an agreement to violate RICO").

### iii.     State law claims

Finally, in count two plaintiffs assert state law claims for civil conspiracy, unjust enrichment, and intentional infliction of emotional distress against all defendants. Am. Compl. ¶¶ 108-110. Defendants contend that plaintiffs have inadequately pleaded these claims.

The allegations in plaintiffs' complaint indicate that only a few of the defendants are alleged to have been involved in the foreclosure actions against Stone, Brown, and the Muhammads. For this reason, and because (as discussed below) plaintiffs' civil conspiracy claims are subject to dismissal, plaintiffs' remaining state law claims implicate only those defendants who were allegedly involved in the foreclosure actions against Stone, Brown, and the Muhammads. These defendants are:

- _Stone_: Washington Mutual; Codilis & Associates, P.C.; DLJ Mortgage Capital, Inc.; Kluever & Platt LLC; Jason Altman. *See* Am. Compl. ¶ 3.

- _Brown_: Bank of America; Wells Fargo; Codilis & Associates P.C. *See id.* ¶¶ 24, 42(o).[2]

- _The Muhammads_: Wells Fargo; Kluever & Platt, LLC. *See id.* ¶ 16.

Therefore, the Court will consider each state law claim separately, addressing whether plaintiffs have stated any claims against these defendants. The parties appear to agree that Illinois law governs plaintiffs' state law claims.

### (a)    Unjust enrichment

Count two of plaintiffs' complaint alleges that "[t]he Defendants' scheme alleged

---

[2] Plaintiffs have made seemingly contradictory allegations against Wells Fargo and Bank of America. As discussed below, Brown has stated no claims against Wells Fargo, but has stated claims of intentional infliction of emotional distress and unjust enrichment against Bank of America.

herein constitutes unjust enrichment." *Id.* ¶ 108.  Under Illinois law, to obtain recovery based on a theory of unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." *Martis v. Pekin Mem. Hosp. Inc.*, 395 Ill. App. 3d 943, 952, 917 N.E.2d 598, 606 (2009).

In Illinois, "unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (2009).  "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Alliance Acceptance Co. v. Yale Ins. Agency*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995).  The underlying claim may be one for damages or restitution, but "[w]hen an underlying claim ... is deficient, a claim for unjust enrichment should also be dismissed." *Martis*, 388 Ill. App. 3d at 1024, 905 N.E.2d at 928.

Stone has failed to state a viable claim of unjust enrichment.  She has not alleged facts indicating that defendants retained a benefit to her detriment.  The complaint affirmatively alleges that the state court dismissed the foreclosure action against Stone.  *See* Am. Compl. ¶ 6.  Though the complaint also asserts that defendants "attempt[ed] to seize and convert" Stone's home and "intentionally, maliciously, willfully, and wantonly injured" her, it contains no allegation of a benefit any defendant retained to Stone's detriment.  *Id.* ¶¶ 5, 7.

In seeking dismissal of Brown's unjust enrichment claim, defendants rely on her allegation that after a mortgage foreclosure suit was filed against Brown, she "refinance[] her mortgage, making payment in full" on the mortgage.  *See id.* ¶ 25.  In the amended complaint, however, Brown makes it clear that this agreement was induced by fraud.  *See id.* ¶¶ 25-26.  Brown has asserted a facially viable claim of fraud in the inducement that could rise to a claim for rescission of the refinancing agreement.  This, in addition to her claim that she was making payments to an entity that was not entitled to receive payment, allows her claim of unjust enrichment to survive defendants' motion to dismiss.

It does not appear, however, that Wells Fargo is the correct defendant on Brown's unjust enrichment claim.  Documents attached to the complaint indicate that LaSalle Bank was the foreclosing entity – and Bank of America is the successor by merger to LaSalle.  Thus Brown may maintain an unjust enrichment claim against Bank of America, but not against Wells Fargo.  She will be required to amend her complaint accordingly.[3]

The Muhammads likewise may maintain an unjust enrichment claim.  They allege that Wells Fargo fraudulently foreclosed upon their home, evicted them, sold the property, and retained the profits from the sale.  Am. Compl. ¶ 16-18.  Wells Fargo, citing state court records, asserts that it reached a settlement with the Muhammads that

---

[3] Bank of America suggests the fact that LaSalle foreclosed as a trustee should affect, in some way, Brown's ability to seek unjust enrichment.  Though Bank of America may ultimately make a persuasive argument to this effect, this is not a basis to grant a motion to dismiss for failure to state a claim in light of the allegations that Brown has made.

resulted in a short sale, the dismissal of the foreclosure action, and the filing of a satisfaction of the Muhammads' mortgage. *See* Wells Fargo Mem. at 5-6; *id.*, Exs. H-I. Wells Fargo contends that this bars a claim of unjust enrichment. The Muhammads respond, however, that the settlement was induced via fraud. Though it is true that no such allegation appears in their complaint, that is likewise true of Wells Fargo's contentions regarding settlement. Because the Muhammads may have a viable claim for rescission of the settlement agreement based on fraud, the Court declines to dismiss their unjust enrichment claim, though the Muhammads would be well advised to amend that claim to deal with the allegations regarding the settlement of the foreclosure suit.

In summary, the Court dismisses Stone's unjust enrichment claim but declines to dismiss the unjust enrichment claims of Brown and the Muhammads.

### (b)    Intentional infliction of emotional distress

Count two also alleges that "Defendants' scheme alleged herein intentionally caused emotional distress to the Plaintiffs." Am. Compl. ¶ 109. "To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Cangemi v. Advocate S. Suburban Hosp.*, 364 Ill. App. 3d 446, 470, 845 N.E.2d 792, 813 (2006).

As discussed above, plaintiffs' complaint alleges that defendants filed fraudulent foreclosure lawsuits with the goal of wrongfully driving plaintiffs from their homes. *See*

*generally* Am. Compl. ¶¶ 1-2.  They assert that defendants' scheme caused them

emotional injury.  *See id.* ¶¶ 7, 11, 15, 19, 23, 26, 30, 34, 38.  Though the complaint is

vague and confusing at times, its allegations—taken as true—are sufficient to give rise

to a plausible claim that the remaining defendants acted outrageously and with

knowledge of a high probability that their conduct would cause severe emotional

distress to plaintiffs.  The Court therefore concludes that Stone, Brown, and the

Muhammads have stated a claim for intentional infliction of emotional distress against

the defendants who were allegedly involved in their foreclosure proceedings.

### (c)    Civil conspiracy

Plaintiffs further contend in count two that "Defendants combined and conspired

with one another to form an association-in-fact to commit the acts alleged herein."  Am.

Compl. ¶ 110.  "The elements of civil conspiracy are:  (1) a combination of two or more

persons, (2) for the purpose of accomplishing by some concerted action either an

unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which

one of the conspirators committed an overt tortious or unlawful act."  *Fritz v. Johnson*,

209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004).

The Court concludes that plaintiffs have failed to state a civil conspiracy claim.

Federal pleading standards require a plaintiff to "meet a high standard of plausibility"

when his complaint alleges "a vast, encompassing conspiracy," as here.  *Cooney v.

Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).  Count two is bereft of any factual

allegations suggesting the existence of a conspiracy, and nowhere else in their sixty-

eight page complaint do plaintiffs allege facts plausibly suggesting the existence of the

alleged "association-in-fact" between all of the various defendants.  At best, plaintiffs'

allegations regarding defendants' conduct in each separate foreclosure action amount to parallel conduct, which is insufficient to state a claim for conspiracy under Rule 12(b)(6). *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 923, 874 N.E.2d 230, 240 (2007) (noting that allegations of parallel conduct "cannot be the basis of an agreement to conspire or knowledge of a conspiracy").

### (d)    Summary

Stone, Brown, and the Muhammads have stated claims of intentional infliction of emotional distress against the defendants that were allegedly involved in their respective foreclosure actions, as identified above. Brown and the Muhammads have also stated claims of unjust enrichment against these defendants. The Court denies defendants' motion to dismiss these claims but otherwise dismisses count two.

### iv.    Remaining arguments

Defendants have made several other miscellaneous arguments in support of their motions to dismiss. The Court will address them in turn.

### (a)    Rule 19

First, defendants contend that plaintiffs' complaint must be dismissed pursuant to Federal Rule of Civil Procedure 19 for failure to join Robert Stone, Cynthia Stone's husband and a co-obligor on her loan, as a party. *See, e.g.*, DLJ & SPS Mem. at 4-5; *see also* Kluever & Altman Mem. at 4-5. Plaintiffs counter that Stone has not "claim[ed] an interest relating to the subject of the action" and therefore is not a necessary party

under Rule 19(a)(1).  Answer to DLJ & SPS Mem. at 4.

Defendants are not entitled to dismissal of this action under Rule 19.  They argue persuasively that Robert Stone is necessary party under Rule 19(a)(1) because of his status as a co-obligor on Cynthia Stone's loan.  Indeed, the exhibits attached to plaintiffs' complaint confirm Stone's status as a co-obligor and co-mortgagor of the property that is the subject of Cynthia Stone's claims.  *See* Am. Compl., Ex. A (complaint to foreclose mortgage of Robert L. Stone and Cynthia Stone and attached mortgage).  Rule 19, however, does not require a district court to dismiss a case once it determines that a required person has not been named as a party.  Rather, as the Seventh Circuit has explained,

> [o]nly if the court determines that a party meets the criteria of Rule 19(a)(1)(A) and (B), *but the party cannot be joined (usually because joinder would destroy complete diversity or the court lacks personal jurisdiction over it)* must the court turn to Rule 19(b) and decide what to do about the problem.  Even then, dismissal is not automatic.  Instead, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  Rule 19(b) spells out factors for the court to consider in making that judgment, with an emphasis on practical measures that will allow either the entire suit or part of it to go forward.

*Askew v. Sheriff of Cook County*, 568 F.3d 632, 635 (7th Cir. 2009) (internal quotation marks omitted) (emphasis added).  In other words, the Court need only consider whether dismissal is appropriate if it determines that Robert Stone cannot be joined.

Defendants have suggested no reason why joining Robert Stone would be infeasible.  Instead, they appear to contend that dismissal is appropriate simply because Stone was not named as a plaintiff.  This is not the law.  Rule 19 provides that "[i]f a person has not been joined as required, the court must order that the person be

-30-

made a party." Fed. R. Civ. P. 19(a)(2). The Court therefore denies defendants'

motion to dismiss based on the failure to join Robert Stone as a party but will order that

Robert Stone be joined as a plaintiff due to the risk that his absence could "leave[] an

existing party subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).

### (b)     Litigation privilege

Next, defendants Codilis & Associates, Ernest Codilis, Kluever & Platt, and

Jason Altman argue that plaintiffs' claims against them must be dismissed because

their alleged conduct was absolutely privileged under either Illinois or federal common

law. Codilis Mem. at 3-7; Kluever & Altman Mem. at 13-15.

Defendants cite cases establishing that under Illinois law, "'anything said or

written in a legal proceeding . . . is protected by an absolute privilege against

defamation actions, subject only to the qualification that the words be relevant or

pertinent to the matters in controversy.'" *Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir.

1994) (quoting *Defend v. Lascelles*, 149 Ill. App. 3d 630, 633, 500 N.E.2d 712, 714

(1986)). They cite no Illinois case applying this privilege to claims outside of the

defamation or libel context, such as plaintiffs' remaining state law claims of intentional

infliction of emotional distress. Though some states have extended the absolute

privilege to such claims, *see, e.g., Rose v. First Am. Title Ins. Co. of Texas*, 907 S.W.2d

639, 643 (Tex. App. 1995), Illinois courts do not appear to have done so. *See*

*Thompson v. Frank*, 313 Ill. App. 3d 661, 665, 730 N.E.2d 143, 146 (2000) (declining to

reach the issue and noting that "[n]o Illinois court has addressed the question of

whether the absolute privilege . . . will also bar an action for intentional infliction of

-31-

emotional distress where both actions arise from the same allegedly defamatory communication."). Similarly, though defendants contend that the privilege bars plaintiffs' FDCPA claims, other circuits have held that the common law litigation privilege "does not absolve a debt collector from liability under the FDCPA." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011).

For these reasons, as well as the fact that under Illinois law "the classification of absolutely privileged communication is necessarily narrow," the Court cannot conclude that the Illinois Supreme Court would, if faced with the issue, extend the absolute litigation privilege to cover claims such as those presented in this case. *See Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 157, 788 N.E.2d 740, 748 (2003). Because Illinois' litigation privilege does not appear to reach plaintiffs' claims, and defendants have cited no binding or persuasive authority establishing that plaintiffs' claims are subject to a federal common law privilege, the Court declines to find that such a privilege applies in this case. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (internal quotation marks omitted) (noting that "[a] standard way in which federal courts make federal common law is by adopting the law of the state whose law would govern in the absence of federal law"). The Court therefore denies defendants' motion to dismiss plaintiffs' remaining claims based on the claim of litigation privilege.

### (c)    Judicial estoppel and bankruptcy

Finally, defendants contend that all of Stone's claims are barred by the doctrine of judicial estoppel because she failed to disclose the claims when she filed her bankruptcy schedules on April 23, 2010, six months before she filed her original

complaint in this case.  DLJ & SPS Mem. at 7.  In defendants' view, Stone "obtained a

benefit from the bankruptcy in forestalling foreclosure of the property for more than two

months before the bankruptcy was dismissed" and therefore cannot recover on any

causes of action she failed to declare in her bankruptcy schedules.  *Id.*; *see also*

Kluever & Altman Mem. at 7 (same).

Under the doctrine of judicial estoppel, "a party who prevails on one ground in a

lawsuit cannot turn around and in another lawsuit repudiate the ground."  *Carnegie v.

Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (internal quotation marks

omitted).  "In the bankruptcy setting, a debtor who receives a discharge by concealing

the existence of a chose in action cannot wait until the bankruptcy ends and then

pursue the claim."  *Williams v. Hainje*, 375 Fed. Appx. 625, 627 (7th Cir. 2010).  In other

words, "a debtor in bankruptcy who denies owning an asset, including a chose in action

or other legal claim, cannot realize on that concealed asset after the bankruptcy ends."

*Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

Plaintiffs do not deny that Stone failed to list her claims in this action when she

filed for bankruptcy.  Instead, they argue that Stone was unaware of her claims when

she filed her bankruptcy schedules.  *See* Answer to DLJ & SPS Mem. at 6-7.

Defendants counter that plaintiffs' complaint contains no allegation to this effect, but

discussed as earlier, the essence of plaintiffs' complaint is that defendants concealed

their wrongful conduct from plaintiffs, including Stone.  *See, e.g.*, Am. Compl. ¶ 4

("Defendants supported their attempt illegally to seize and convert the Stones' home by

attempting to cover up their lack of any cognizable interest in the Stones' property, and

to cover up the fact that they do not hold the mortgage Note, by filing two fraudulent

and deceptive pseudo-affidavits with the court."). Defendants have pointed to no other evidence showing that Stone was aware of her claims during the pendency of her bankruptcy case. They contend that Stone must have known about the claims because she filed for bankruptcy while her foreclosure action was pending. But the fact that Stone was aware of the foreclosure case does not mean that she knew that the case was based on fraudulent pretenses. On the present record, therefore, the Court cannot conclude that Stone concealed her claims from the bankruptcy court. Defendants thus are not entitled to dismissal of Stone's claims on the basis of judicial estoppel. *See Cannon-Stokes*, 453 F.3d at 448.

### (d)    Standing and bankruptcy

Finally, in a reply brief, defendants suggest that Stone lacks standing to sue because her claims became property of her bankruptcy estate and thus can only be asserted by the bankruptcy trustee. *See* DLJ & SPS Reply at 4. In other words, defendants challenge Stone's status as the "real party in interest." *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010); *see also id.* (noting as a "prudential limitation on justiciability" the "principle that the named plaintiff cannot sue in federal court to assert the rights of a third party").

Though defendants raised this argument in seeking dismissal of several other plaintiffs' claims, they did not raise it in their opening briefs with respect to Stone. *See, e.g.*, Codilis Mem. at 10 (noting that "[t]his argument applies to the Dhanjis, Cruz and Torres and the Amis"); Bank of America Mem. at 5 (raising argument generally but not discussing its applicability to Stone); Citibank Mem. at 4 (raising argument as to Cruz and Torres only); PNC Mem. at 7 (raising argument as to the Dhanjis only). As a result,

Stone did not have an opportunity to address the point.  The Court therefore declines to consider the argument unless and until defendants assert it in a procedurally appropriate motion.

## Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss [docket nos. 78, 101, 104, 107, 108, 114, 117, 118, 124, 129, 131, 134, and 136] in part and denies them in part.  The Court rules as follows:

- Counts one, four, five, six, and seven of the first amended complaint are dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

- With regard to count two, the Court denies defendants' motions to dismiss the intentional infliction of emotional distress claims of Cynthia Stone, Rondell and Sharon Muhammad, and Bettye Jean Brown as to defendants Bank of America, Washington Mutual, Wells Fargo, Codilis & Associates, DLJ Mortgage Capital, Kluever & Platt, and Jason Altman and also denies the motions with regard to the unjust enrichment claims of the Muhammads and Brown.  In all other respects, count two is dismissed.

- With regard to count three, the Court denies defendants' motions to dismiss the FDCPA claims of Cynthia Stone, Rondell and Sharon Muhammad, and Bettye Jean Brown as to defendants Select Portfolio Servicing and Codilis & Associates.  In all other respects, count three is dismissed.

- The Court orders that Robert L. Stone be joined as a plaintiff with regard

to the remaining claims brought by Cynthia Stone.

The case is set for a status hearing on September 1, 2011 at 9:30 a.m. for the purpose of setting a deadline for answering the remaining claims, as well as a discovery and pretrial schedule.  Counsel are directed to confer prior to that date so that they can propose a schedule to the Court.

_____s/ Matthew F. Kennelly_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 19, 2011